**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: JOSEPH GRASSO,** | : |
| | : |
| **JOSEPH GRASSO, et al.,** | : |
|       **Appellants,** | :      **CIVIL ACTION NO. 15-5424** |
| | : |
|       **v.** | :      **BANKRUPTCY NO. 12-11063** |
| | : |
| **CHRISTINE C. SHUBERT, Chapter** | : |
| **7 Trustee for the Estate of Joseph Grasso,** | : |
| **et al.,** | : |
|       **Appellees.** | : |

## MEMORANDUM OPINION

**RUFE, J.**                                                                    **July 26, 2016**

Before the Court is Debtor Joseph Grasso's *pro se* appeal from the Bankruptcy Court's

September 15, 2015 order granting motions for summary judgment filed by the appellees,

Marshall J. Katz, Madison Capital Company, LLC, and Christine C. Shubert, Chapter 7 Trustee

for the Estate of Joseph Grasso. For the following reasons, the Bankruptcy Court's Order will be

affirmed.

## I.      PROCEDURAL AND FACTUAL HISTORY

The Court writes primarily for the parties and therefore familiarity with the course of the

bankruptcy proceedings is assumed. On February 6, 2012, Joseph Grasso filed a voluntary

petition for bankruptcy under Chapter 11 of the Bankruptcy Code. His earliest schedules

disclosing creditors revealed at least $2,950,020.19 in secured claims, an unknown amount in

unsecured priority claims, and at least $36,169,174.00 in unsecured nonpriority claims.

### A.     Motion to Appoint Trustee

On September 14, 2012, appellee Madison Capital filed a motion to appoint a trustee. After an evidentiary hearing, the Bankruptcy Court granted the motion, finding that Madison Capital had demonstrated by clear and convincing evidence that cause existed to appoint a Chapter 11 Trustee because of "(1) the Debtor's unrelenting dishonesty; and (2) gross mismanagement of estate assets."[1] With respect to Debtor's dishonesty, the Bankruptcy Court found that Debtor gave conflicting testimony as to his role in the purchase of a proof of claim filed by Wilmington Savings Fund Society, FSC (WSFS) against Debtor and about his sources of post-petition income. The Bankruptcy Court also found that Debtor made material omissions from his financial disclosures, including failing to disclose receipt of estate assets from the sale of a property at 1500-1504 Sansom Street in Philadelphia and his receipt of approximately $500,000 in distributions from Curtis Investors, L.P. The Bankruptcy Court Court found that Debtor's gross mismanagement of the estate included diverting estate assets to (1) fund the operation of entities in which he holds an ownership interest, (2) fund expenses of his non-debtor wife, and (3) purchase the WSFS claim.

Debtor filed a notice of appeal of the order appointing a trustee, but shortly thereafter withdrew the notice of appeal and filed a motion for reconsideration of the order. In Debtor's motion, he argued (1) that the record did not support the Bankruptcy Court's factual findings and (2) that including the factual findings in the order would cause injury to his business reputation. On April 4, 2013, the Bankruptcy Court issued a memorandum opinion and order denying Debtor's motion except as to his request to strike one factual finding in the October 2012 Order.

---

[1] *In re Grasso*, No. 12-bk-11063 (Bankr. E.D. Pa 2012), Doc. No. 301 at ¶ H. This procedural history relies on the docket below, of which the Court may take judicial notice. *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 205–206 (3d Cir. 1995).

After reviewing "the extensive factual record established over three days of hearings and multiple memoranda submitted by various interested [parties]" the Court held that "its findings contained in the Trustee Order were supported by ample evidence."[2] The Court also held that "any harm that may accrue to the interest of creditors and [Debtor's] estate as a result of this Court's recognition of the Debtor's bad acts does not mandate that this Court restrict the scope of its findings" because each finding "was relevant to this Court's determination that the Debtor's conduct manifested the extreme circumstances that are a prerequisite to appointment of a Chapter 11 Trustee."[3] Debtor did not file an appeal from that order.

**B.   Motion to Convert**

On March 22, 2013, appellee Katz filed a motion to convert the case from Chapter 11 to Chapter 7, arguing that Debtor had failed to comply with his financial disclosure obligations and was administratively insolvent.[4] Madison Capital filed a memorandum in support of Katz's motion, and argued that substantial and continuing losses to the estate and the impossibility of a successful plan of reorganization required conversion.[5]

On May 27, 2013, Katz withdrew the motion to convert; Madison, however, did not withdraw its argument, and the Bankruptcy Court treated Katz's motion as one by Madison. The Bankruptcy Court held an evidentiary hearing on the motion on May 28, 2013, at which it received documents and witness testimony, including testimony by the Trustee and Charles N.

---

[2] *In re Grasso*, 490 B.R. at 529.

[3] *Id.*

[4] Bankr. Doc. No. 507.

[5] Bankr. Doc. No. 524.

Persing, an accountant for the Trustee. After consideration of the arguments before it, on June 12, 2013, the Bankruptcy Court converted Debtor's Chapter 11 to Chapter 7.[6]

The Bankruptcy Court issued a memorandum opinion explaining the reasons for its order on July 11, 2013.[7] The Bankruptcy Court determined that cause existed for converting the case because there was a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."[8] It concluded that there was substantial diminution of the estate from "(1) the Debtor's postpetition expenses; (2) the sale of the [a]ntique [a]utomobiles; (3) the diversion of the three payments from Curtis Investors, LP; and (4) the estate's negative cash flow."[9] The postpetition expenses that the Bankruptcy Court referred to include "at least $282,870 of estate assets to fund renovations to his personal residence, the expenditure of $25,506 of estate assets at 'Restaurants,' $68,300 of estate assets to purchase an automobile, and $20,000 of estate assets to fund gifts to the Debtor's family."[10] The Court determined that Debtor diverted distributions "that should have been received by his estate" to non-debtor entities to fund these personal expenses in order to hide the expenditures from the Court.[11]

---

[6] Bankr. Doc. No. 652.

[7] *In re Grasso*, 497 B.R. 448 (Bankr. E.D. Pa. 2013), *aff'd sub nom. Grasso v. Madison Capital Co.*, No. 13-4308, 2014 WL 1281123 (E.D. Pa. Mar. 31, 2014).

[8] 11 U.S.C. § 1112(b)(4)(A); *In re Grasso*, 497 B.R. at 456-57.

[9] *Id.* at 455.

[10] *Id.* at 455-56.

[11] *Id.* at 456.

Debtor filed an appeal of the Bankruptcy Court's order granting the motion to convert.[12] This Court affirmed the Bankruptcy Court's order because Debtor "failed to present any record evidence to suggest that the Bankruptcy Court's factual findings were clearly erroneous, and…the record [before the Court] supports the Bankruptcy Court's conclusions."[13]

### C.    Motions for Summary Judgment

After Debtor's case was converted to Chapter 7, Madison, Katz, the Chapter 7 Trustee, and the United States Trustee each filed a complaint objecting to the discharge of his debts under 11 U.S.C. § 727, initiating four adversary proceedings.[14] On February 24, 2014, the Bankruptcy Court entered a stipulation and consent order in each adversary proceeding, signed by all parties, ordering that any dispositive motion filed in any of the four § 727 adversary proceedings would apply to all adversary proceedings and that Debtor could file a consolidated response to all dispositive motions, and scheduling a date for a joint hearing on any consolidated dispositive motions.[15] Katz, the Chapter 7 Trustee, and Madison Capital filed motions for summary judgment, and the Bankruptcy Court held a hearing on the motions on May 19, 2014.[16]

Debtor did not file an opposition brief to the motions and instead filed a motion to suspend the adversary proceedings pending the Bankruptcy Court's disposition of a motion to

---

[12] On appeal, Debtor did not dispute the existence and impropriety of the postpetition expenses, the sale of the antique cars, or the diversion of the three payments from Curtis. *Grasso v. Madison Capital Co.*, No. 13-4308, 2014 WL 1281123, at *3 (E.D. Pa. Mar. 31, 2014).

[13] *Grasso,* 2014 WL 1281123,  at *7.

[14] Bankr. Doc. No. 811 (Complaint filed by Madison Capital Company, LLC initiating Adv. Pro. No. 13-438); Bankr. Doc. No. 844 (Complaint filed by United States Trustee initiating Adv. Pro. No. 13-477); Bankr. Doc. No. 845 (Complaint filed by Chapter 7 Trustee initiating Adv. Pro. No. 13-479); Bankr. Doc. No. 847 (Complaint filed by Marshall Katz initiating Adv. Pro. No. 13-481).

[15] Adv. Pro. No. 13-438, Doc. No. 14; Adv. Pro. No. 13-477, Doc. No. 12; Adv. Pro. No. 13-479, Doc. No. 19; Adv. Pro. No. 13-481, Doc. No. 16.

[16] Adv. Pro. No. 13-438, Doc. No. 25; Adv. Pro No 13-479, Doc. No. 28; Adv. Pro. No. 13-481 Doc. No. 19.

disqualify Debtor's counsel, filed by the Chapter 7 Trustee.[17] The Bankruptcy Court granted

Debtor's Motion on May 23, 2014, and ordered that its consideration of the adversary

proceedings would be stayed until June 25, 2014.[18]  On the same day, the Bankruptcy Court

granted Debtor's counsel's Motion to Withdraw from representation of Debtor in the main

bankruptcy case and the adversary proceedings.[19] Even after the case was removed from stay,

Debtor did not file an opposition to the motions for summary judgment, and on September 15,

2015 the Court entered a memorandum opinion and order granting the motions.

In their motions for summary judgment, appellees argued that Debtor should be denied

discharge under § 727(a)(2)(A), which prohibits the transfer of estate property within one year

before filing a bankruptcy petition, § 727(a)(2)(B), prohibiting the transfer of estate property

after filing the bankruptcy petition, § 727(a)(3), prohibiting concealment of financial records,

and § 727(a)(4)(A), prohibiting false oaths.[20]  The Bankruptcy Court held that "that application

of the law of the case doctrine and/or issue preclusion requires this Court to grant the Motions

with regard to the Plaintiffs' § 727(a)(2)(B) claims" because its prior opinions expressly decided

each element of the § 727(a)(2)(B) claim.[21] "In the interests of judicial economy," the

Bankruptcy Court did not consider the remaining § 727 claims.[22]

On appeal, Debtor argues that the Bankruptcy Court erred in relying on its earlier factual

findings to hold that Debtor was not entitled to discharge; he contends that the law of the case

---

[17] Bankr. Doc. No. 1127.

[18] Bankr. Doc. No. 1194.

[19] Bankr. Doc. No. 1195.

[20] 11 U.S.C. § 727.

[21] *In re Grasso*, 537 B.R. 216, 222 (Bankr. E.D. Pa. 2015).

[22] *Id.*

doctrine and issue preclusion do not apply to the Bankruptcy Court's earlier factual findings, and
that these factual findings were erroneous.

## II.    STANDARD OF REVIEW

Because district courts sit as appellate tribunals over orders issued in bankruptcy
proceedings, they review bankruptcy courts' factual findings for clear error and legal conclusions
*de novo*, while matters committed to the bankruptcy courts' discretion are reviewed for abuse
thereof.[23] "A factual finding is clearly erroneous if the district court is firmly convinced, based
on all the evidence, that the bankruptcy court made a mistake," but the district court "may not
engage in independent fact finding."[24] "'Abuse of discretion' is a phrase which sounds worse
than it really is. All it need mean is that, when judicial action is taken in a discretionary matter,
such action cannot be set aside by a reviewing court unless it has a definite and firm conviction
that the court below committed a clear error of judgment in the conclusion it reached upon a
weighing of the relevant factors."[25] A court abuses its discretion when it commits an error of
law.[26]

## III.   DISCUSSION

Under § 727 (a)(2)(B), a debtor shall be denied discharge if he:

with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with
custody of property under this title, has transferred, removed, destroyed, mutilated, or
concealed, or has permitted to be transferred, removed, destroyed, mutilated, or
concealed…property of the estate, after the date of the filing of the petition.[27]

---

[23] *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995).

[24] *In re Terry*, 543 B.R. 173, 177 (E.D. Pa. 2015).

[25] *Perichak v. Int'l Union of Elec. Radio & Mach. Workers*, 715 F.2d 78, 86 (3d Cir. 1983) (quoting *In re Josephson*, 218 F.2d 174, 182 (1st Cir.1954)).

[26] *United States v. Jake*, 281 F.3d 123, n.5 (3d Cir. 2002).

[27] 11 U.S.C. § 727(a)(2)(B).

To deny discharge under this provision for the unauthorized transfer of property, a bankruptcy court must find: (1) that the debtor transferred property or permitted property to be transferred; (2) that the property belongs to the debtor's estate; (3) that the transfer occurred after the debtor filed his bankruptcy petition; and (4) that the debtor intended to hinder, delay, or defraud a creditor.[28] Appellees argue that that the Bankruptcy Court's opinion and orders on the motion to appoint a trustee and the motion to convert found that Debtor transferred property of the estate with the intent to hinder, delay, or defraud creditors, and that the Bankruptcy Court must rely on its earlier findings under the doctrine of the law of the case and issue preclusion.[29]

The Bankruptcy Court did not decide which doctrine, issue preclusion or the law of the case, applied to its earlier orders, instead holding that "the law of the case doctrine *and/or* issue preclusion requires this Court to grant the Motions with regard to the Plaintiffs' § 727(a)(2)(B) claims."[30]  Issue preclusion "prevents a party who litigated an issue previously from rearguing that particular issue in a subsequent proceeding,"[31] while the law of the case doctrine "limits relitigation of an issue once it has been decided in an earlier stage of the same litigation."[32] As the law of the case doctrine does not apply to final court orders, when a party fails to appeal a final order, the appropriate doctrine is issue preclusion.[33] "[A] broader concept of finality"

---

[28] *In re von Kiel*, 550 F. App'x 105, 108 (3d Cir. 2013) (internal quotations and citations omitted).

[29] Appellee United States Trustee also argues that Debtor has waived or forfeited his arguments on appeal because he failed to file a brief in opposition to the motions for summary judgment. The Third Circuit has held that when a nonmoving party fails to respond to a summary judgment motion, the moving party must still establish that the facts entitle it to judgment as a matter of law. *Anchorage Associates v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). As Federal Rule of Civil Procedural 56 applies to adversary proceedings in bankruptcy courts, the Court declines to find forfeiture. Fed. R. Bankr. P. 705.

[30] *In re Grasso*, 537 B.R. at 222 (emphasis added).

[31] *Fink v. Bishop*, No. 15-2689, 2016 WL 670137, at *3 (3d Cir. Feb. 18, 2016) (emphasis added).

[32] *Hamilton v. Leavy*, 322 F.3d 776, 786-87 (3d Cir. 2003).

[33] *In re Visteon Corp.*, 579 F. App'x 121, 128 (3d Cir. 2014).

applies in bankruptcy proceedings,"[34] and the Third Circuit has held that bankruptcy court orders appointing trustees and converting cases to Chapter 7 are final, appealable orders.[35] Because Debtor already appealed and lost or chose not to appeal the earlier, final Bankruptcy Court orders appointing a trustee and converting the case to one under Chapter 7, issue preclusion, rather than the law of the case doctrine applies to these orders.

"The prerequisites for the application of issue preclusion are satisfied when: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment."[36] As discussed, the Bankruptcy Court's orders appointing a trustee and converting the case from Chapter 11 to Chapter 7 were final orders. Debtor argues, however, that issue preclusion does not apply because the remaining elements are not satisfied; he contends that the issues sought to be precluded are not the same, were not actually litigated, and were not essential to the Bankruptcy Court's opinions and orders.

### A.    Whether the Issues Sought to be Precluded are the Same

Debtor first contends that the Bankruptcy Court's earlier orders did not decide the issues sought to be precluded on summary judgment because the legal standard for denying a discharge is different than the standards for appointing a trustee or converting a case to Chapter 7. In *In re Docteroff*, the debtor similarly argued that he was not estopped from claiming that a debt was dischargeable because the dischargeability of a debt was not at issue in a previous state court

---

[34] *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 470 (3d Cir. 1998).

[35] *Id.* at 470-71 (appointing a trustee); *In re Fleurantin*, 420 F. App'x 194, 196 (3d Cir. 2011) (converting case to Chapter 7).

[36] *Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007) (quoting *Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co.,* 63 F.3d 1227, 1231–32 (3d Cir.1995).

lawsuit.[37] Because the plaintiffs sought only to estop the debtor from asserting facts that were established in the previous lawsuit, the Third Circuit held that issue preclusion applied if "the facts established by the previous judgment in the Washington court that the progress payments were obtained by fraud, embezzlement, and willfully injurious conduct, meet the requirements of nondischargeability."[38] Here too, appellees sought only to estop Debtor from asserting certain facts, and therefore the issues sought to be precluded are the same if the facts established by the previous Bankruptcy Court orders meet the requirements for denying discharge in § 727(a)(2)(B): that Debtor transferred property of the estate, after filing his bankruptcy petition, with the intent to hinder, delay, or defraud creditors.[39]

### (1)      Transfer of Estate Property

In its opinion granting the motions for summary judgment, the Bankruptcy Court held that it previously found that Debtor had transferred property or permitted property to be transferred that belonged to his estate. The Bankruptcy Court identified three specific transactions that satisfied these requirements: (1) the sale of the Sansom Street Property and purchase of the WSFS proof of claim; (2) Debtor's diversion of distributions from Curtis Investors LP; and (3) Debtor's involvement in the sale and purchase of automobiles. Debtor argues that each of these transactions was made by a non-debtor entity in which Debtor holds an ownership interest, and that there was never a determination that the separate entities should be consolidated with Debtor. However, the Bankruptcy Court's prior orders explicitly found, for

---

[37] 133 F.3d 210, 215 (3d Cir. 1997).

[38] *Id.*

[39] Debtor does not dispute that the Bankruptcy Court determined that the transfers occurred after Debtor filed his bankruptcy petition.

each transaction, that Debtor, rather than another person or entity, transferred or caused to be transferred property that belonged to his estate.

First, in the Bankruptcy Court's October 16, 2012 order, it explicitly found that Debtor, rather than another entity, diverted estate assets to purchase the WFSF proof of claim.[40] In its April 4, 2013 memorandum opinion, the Bankruptcy Court further expounded on this finding, explaining that on May 16, 2013, the Sansom Partnership, in which Debtor held an ownership interest, sold its property at 1500-1504 Sansom Street.[41] The partnership agreement required proceeds from the sale of the Sansom property to be distributed to all partners in accordance with their partnership interests.[42] However, Debtor's share of the proceeds, at least $779,344.92, was not distributed to his estate as required, and instead was used to purchase the proof of claim held by WSFS.[43] The Bankruptcy Court therefore found that Debtor funded the purchase of the WSFS claim with the assets that the Sansom Partnership was required to distribute to Debtor, causing the Sansom Partnership to divert property of his estate.[44]

Similarly, in the Bankruptcy Court's July 11, 2013 memorandum opinion granting the motion to convert the case to Chapter 7, the Bankruptcy Court determined that Debtor had received at least three payments totaling over $340,000 from Curtis Investors that should have, but did not, accrue to his estate, and that Debtor made the transfer without approval from the

---

[40] Bankr. Doc. No. 301 at ¶ L(9) ("*The Debtor's* diversion of *estate assets* to purchase the WSFS Claim.") (emphasis added).

[41] *In re Grasso*, 490 B.R. 500, 509-11 (Bankr. E.D. Pa. 2013).

[42] *Id.* at n. 5.

[43] *Id.* at 508-510.

[44] The Bankruptcy Court also found that the remaining proceeds from the sale of the Sansom property "were either made for the Debtor's benefit to non-debtor entities, or issued to the Debtor and diverted by him to the operating accounts of non-debtor entities that he controls." *Id.* at 508-509.

Bankruptcy Court or his creditors.[45] The Bankruptcy Court also determined that Debtor sold three antique automobiles without Court approval, failed to distribute the proceeds from the sale to his estate, and purchased three automobiles using funds that were diverted from his estate.[46]

Thus, contrary to Debtor's contentions, the Bankruptcy Court did expressly find that Debtor, rather than other entities, transferred or caused to be transferred, property of his estate on multiple occasions.

### (2)        Intent to Hinder, Delay, or Defraud

Debtor argues that the Bankruptcy Court did not previously find that his conduct was intentional. However, "[g]iven the difficulty of demonstrating intent, this proof [of intent] may be based on inferences drawn from a course of conduct."[47] On appellees' motions for summary judgment, the Bankruptcy Court held that its earlier finding that Debtor concealed and attempted to cover up his involvement in the WSFS transaction was sufficient to establish that Debtor had the intent to hinder, delay, or defraud a creditor.[48] The Court agrees that the Bankruptcy Court's finding that Debtor concealed his involvement in transferring property of the estate, with respect to the WSFS transaction and other transactions,[49] establishes the requisite intent.[50] Moreover, the

---

[45] *In re Grasso*, 497 B.R. at 452, 455.

[46] *Id.*

[47] *See In re DiLoreto*, 266 F. App'x 140, 144 (3d Cir. 2008).

[48] The Bankruptcy Court's earlier orders also found that Debtor's conduct was "willful," Bankr. Doc. No. 301 at ¶ N, and that it was "part of an intentional scheme to obscure from this Court and his creditors the nature of his finances," *In re Grasso*, 490 B.R. at 506.

[49] In the Bankruptcy Court's October 16, 2012 Order, it found that Debtor gave conflicting testimony about his involvement in the purchase of the WSFS proof of claim and about his sources of post-petition income, made material omissions from his financial disclosures, failed to disclose receipt and use of estate assets, demonstrated animosity towards legitimate attempts to obtain information. Bankr. Doc. No. 301 at ¶ J, L(8), Z. In the Bankruptcy Court's opinion granting the motion to convert, it found that Debtor failed to disclose payments from Curtis Investors to Debtor that should have accrued to his estate until the trustee filed a status report in February 2013, failed to disclose sales of antique automobiles, and diverted distributions that should have been received by his estate to hide personal expenditures, including for renovations of his personal residence, restaurants, and gifts to family. *In re Grasso*, 497 B.R. at 452, 456.

Bankruptcy Court's finding that Debtor "used his network of nondebtor entities to siphon assets from his estate…as part of his efforts to frustrate his creditors' collection efforts"[51] also establishes that Debtor intended to hinder his creditors by transferring property of the estate.

As the Bankruptcy Court's prior orders established each element under § 727(a)(2)(B), the issues sought to be precluded were the same.

### B.    Whether the Issues were Actually Litigated

Debtor next argues that the issue of his intent was not actually litigated, as no evidence of his specific intent was ever presented to or considered by the Bankruptcy Court. As discussed, however, Debtor's conduct is sufficient to establish intent, and the Bankruptcy Court found that his attempts to conceal and cover up his transfer of estate assets were sufficient to establish this intent.[52] The parties also focused on Debtor's efforts to conceal information in their briefing to the Bankruptcy Court. For example, Madison Capital devoted a section of its brief in support of its motion to appoint a trustee to Debtor's "pattern of obfuscation,"[53] which Debtor, who was represented by counsel at the time, responded to and denied.[54] Similarly, in the briefing on the

---

[50] *Chusid v. First Union Nat. Bank*, No. 97-4134, 1998 WL 42292, at *9 (E.D. Pa. Jan. 21, 1998) (finding debtor's failure to explain omissions established that he intended to defraud creditors by concealing his property); *In Re Corona*, No. 08-15924 (DHS), 2010 WL 1382122, at *15-16 (D.N.J. Apr. 5, 2010) (finding that the debtor had an intent to hinder, delay, or defraud her creditors because the debtor omitted information about several assets, sources of income, and liabilities from her bankruptcy petition and there was evidence that she likely would not have disclosed this information if it had not been discovered by other parties); *In re Zimmerman*, 320 B.R. 800, 811 (Bankr. M.D. Pa. 2005) ("The Court may infer fraud from a series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive") (internal quotation marks omitted); *In re Weidner*, 476 B.R. 873, 883 (Bankr. E.D. Pa. 2012) ("A court may infer an intent to hinder or delay creditors where the debtor has committed some act of deception ... that would justify a finding that the debtor improperly intended to forestall creditors from realizing on their claims") (internal quotation marks omitted).

[51] *In re Grasso*, 497 B.R. at 459.

[52] *See Reaves v. Pennsylvania Bd. of Prob. & Parole*, 580 F. App'x 49, 53 (3d Cir. 2014) (finding that issues were actually litigated where the district court in the first action made factual finding and legal conclusions on the same constitutional claims at issue in the second action).

[53] Bankr. Doc. No. 258 at 8-11.

[54] Bankr. Doc. No. 270 at 8-10.

motion to convert, Katz focused on Debtor's bad faith and raised the issue of Debtor's efforts to hide assets from creditors,[55] while Madison Capital devoted a section of its brief to Debtor's "[f]ailure to disclose assets and continual pattern of hiding, transferring, assigning and/or disposing of assets."[56] This is sufficient to establish that the issues were actually litigated.

While Debtor argues that he did not have a full and fair opportunity to present facts and legal argument on the post-petition transfers of estate property, in addition to the opportunity to address these issues in responses to appellees' briefs,[57] Debtor had the opportunity to present evidence and argument at hearings on both the motion to appoint a trustee and the motion to convert.[58] Debtor does not allege any specific defects in the evidentiary hearing or point to any evidence establishing that he was denied the opportunity to litigate the issues to which the Bankruptcy Court gave preclusive effect.

## C.     Whether the Factual Findings Were Essential

Finally, Debtor argues that the findings the Bankruptcy Court relied on to grant summary judgment were not necessary to its earlier orders. "The necessity requirement [] ensures that preclusive effect is not given to determinations that did not "receive close judicial attention, or

---

[55] Bankr. Doc. No. 507 at 5-12

[56] Bankr. Doc. No. 524 at 4. *See ITT Corp. v. Intelnet Int'l*, 366 F.3d 205, n.10 (3d Cir. 2004) (When an issue is properly raised, by the pleadings orotherwise, and is submitted for determination and isdetermined, the issue is actually litigated) (citing the Restatement (Second) of Judgments, § 27).

[57] The record also establishes that Debtor's transfers of estate property were actually litigated. For example, Madison Capital argued in its brief in support of its motion to appoint a trustee that Debtor used estate assets to purchase the WSFS proof of claim, Bankr. Doc. No. 258 at 3-6, and Debtor argued in his opposition brief that 15th and Sansom, L.P. purchased the claim, Bankr. Doc. No. 270 at 6. After an evidentiary hearing, the Bankruptcy Court held that Debtor caused the transfer of estate assets to purchase the claim. Bankr. Doc. No. 301 at ¶ L(9); *In re Grasso*, 490 B.R. 508-509. Similarly, on the motion to convert, Madison's brief in support focuses on continuing loss to the bankruptcy estate, including through the sale and purchase of automobiles, Bankr. Doc. No. 524 at 2-3. After an evidentiary hearing, the Bankruptcy Court found that Debtor purchased automobiles using funds diverted from his estate, and sold automobiles without distributing the proceeds to his estate. *In re Grasso*, 497 B.R. at 452, 455.

[58] Bankr. Doc. No 298; Bankr. Doc. No 643.

14

that were unappealable by virtue of being incidental to a decision."[59] Parties should be estopped only on issues they actually deem important, and not on incidental matters."[60]

The issues of Debtor's transfer of estate property and efforts to conceal the transfers were important to the parties, having briefed them in support or in opposition to the motions to appoint a trustee and convert the case. Additionally, the Bankruptcy Court's determinations that there was cause to appoint a trustee and to convert rested on its findings of Debtor's misconduct in transferring estate assets without Court or creditor permission.[61] These factual findings, therefore, received close judicial attention and were a necessary ingredient to the Bankruptcy Court's determination that there was cause to convert and appoint a trustee.[62] On the motion to appoint a trustee, for example, the Bankruptcy Court found that Debtor transferred property of the estate to purchase the WSFS proof of claim and that this transfer constituted gross mismanagement of the estate, which provided cause under 11 U.S.C. § 1104(a)1 and (a)(2) to appoint a trustee.[63] While other factual findings also supported Debtor's gross mismanagement

---

[59] *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 250 (3d Cir. 2006) (internal citation omitted).

[60] *Id.* (internal citations omitted).

[61] Debtor could have contested these factual findings on appeal, but did not. Debtor appealed only the Bankruptcy Court's order on the motion to convert, but did not contest its factual findings as to his conduct in transferring property of the estate. *See e.g., Grasso,* 2014 WL 1281123, at *3 ("Grasso does not dispute the existence and impropriety of the postpetition expenses, the sale of the antique cars, and the diversion of the three payments from Curtis that the Bankruptcy Court relied on in determining cause for conversion existed.").

[62] *Peloro,* 488 F.3d at 176 (holding that a factual finding was essential where it was a necessary ingredient to the bankruptcy court's holding).

[63] *See* Bankr. Doc. No. 301 at ¶¶ H, L, M ("This Court finds that the Movant has shown by clear and convincing evidence that cause exists to appoint a Chapter 11 Trustee as demonstrated by….[Debtor's] gross mismanagement of estate assets…. The Debtor's gross mismanagement of estate assets is evidenced by…The Debtor's diversion of estate assets to purchase the WSFS Claim."). Similarly, with respect to the motion to convert, the Bankruptcy Court determined that there was a continuing loss to or diminution of the estate as a result of the sale of the antique automobiles and the diversion of the three payments from Curtis Investors, LP, which provided cause to convert. *In re Grasso*, 497 B.R. at 455. The Bankruptcy Court also found that because Debtor continued to use non-debtor entities to siphon assets from his estate to frustrate his creditors' collection efforts, there were no unusual circumstances establishing that conversion was not in the best interests of his creditors, the second prong of the test on a motion to convert. *Id.* at 455-57.

of estate assets, and the Bankruptcy Court also determined that Debtor's dishonesty constituted

cause to convert, the Bankruptcy Court found it was required to identify all of the reasons to

appoint a trustee because:

> In determining whether appointment of a Chapter 11 Trustee was warranted, this Court was required to consider the totality of the circumstances. Each of the findings contained in the Trustee Order were relevant to this Court's determination that the Debtor's conduct manifested the extreme circumstances that are a prerequisite to appointment of a Chapter 11 Trustee.[64]

The Bankruptcy Court's factual findings as to Debtor's transfer of estate assets and his intent to

hinder were therefore essential to the Bankruptcy Court's decisions to appoint a trustee and

convert the case to a Chapter 7 case.[65]

While Debtor argues extensively that the Bankruptcy Court's factual findings are

erroneous, because the Court holds that the Bankruptcy Court did not err in giving preclusive

effect to its earlier findings, Debtor is estopped from making this argument.[66] Debtor had the

opportunity to appeal the Bankruptcy Court's factual findings after the earlier rulings. That he

chose not to do so does not allow him to re-litigate the issues now.

---

[64] *In re Grasso*, 490 B.R. at 529. Even so, the Third Circuit has held that "independently sufficient alternative findings should be given preclusive effect." *Jean Alexander Cosmetics, Inc.*, 458 F.3d at 255.

[65] Debtor also argues that issue preclusion does not apply because "subsequent testimony presented to the Court by David Grasso, the Debtor's brother, [] completely refute[s] the previously unsubstantiated allegation that the Debtor had significant involvement in the partnership acquiring the WSFS claim at a discount." Appellant's Brief, Doc. No. 6 at 10. While issue preclusion is inappropriate if "facts essential to the earlier litigated issue have changed," *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995), the Court cannot determine whether essential facts have changed because Debtor has failed to attach an official transcript from the proceeding in which this testimony was given. *See Grasso*, 2014 WL 1281123, at *3 ("This Court is unable to determine whether the Bankruptcy Court clearly erred in its evaluation of the testimony before it without an official transcript. Therefore, the Bankruptcy Court's factual findings with respect to the testimony before it will be affirmed.").

[66] *Am. Health Sys., Inc. v. Liberty Health Sys.*, No. 90-3112, 1991 WL 193456, at *6 (E.D. Pa. Sept. 24, 1991) ("A final valid judgment even though erroneous, is not subject to collateral attack. Normally no matter how erroneous it may be on either the facts or the law, until properly set aside, it has a binding effect on the parties and their privies as *res judicata* or collateral estoppel in all the nation's tribunals federal and state.").

**IV.     CONCLUSION**

For the reasons stated, the Bankruptcy Court's Order granting summary judgment to appellees will be affirmed.